**SYSTEMS RESEARCH, INC. and Systems Control, Inc., Plaintiffs,**

v.

**RANDOM, INC. and Orvin Nordness, Jr., a/k/a Skip Nordness, Defendants.**

**No. 85 C 2507.**

United States District Court, N.D. Illinois, E.D.

Aug. 1, 1985.

Mario F. Cirignani, Thomas R. Cirignani & Associates, Chicago, Ill., for plaintiffs.

David A. McGuire, Stone, McGuire & Benjamin, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Before the Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Jurisdiction is invoked pursuant to 18 U.S.C. § 1964(a) and the doctrine of pendent jurisdiction. For the reasons stated below, defendant's motion to dismiss is denied.

### FACTS

Plaintiffs, Systems Research ("Research") and Systems Control ("Control") are both licensed employment agencies engaged in the business of securing employment for persons seeking employment and for employers seeking employees. Since January 1, 1981, Control has been counseling and advising solely on behalf of employers. Both agencies employ placement counselors who interview, advise applicants and employers, and arrange contacts between employers and employees. The plaintiffs are cooperative corporations and are not competitors.

Defendant, Random, Inc. ("Random") is an executive recruiting agency engaged in the business of securing employees for employers. Random has been a direct competitor of both plaintiffs since September 20, 1980. Defendant Nordness was an employee of plaintiff Control from June 15, 1979 to September 19, 1980. Defendant Nordness is currently the president of Ran-

dom and its only shareholder, thereby controlling and dominating its corporate activities.

From April 18, 1977 to February 15, 1985, Mark Johnson was an employment counselor for both plaintiffs. As an employment counselor, Johnson was paid a percentage of the applicant's gross salary when a job position was filled. By virtue of his position, Mark Johnson stood in a fiduciary relationship with both plaintiffs, owing them the duties of loyalty and fidelity.

Johnson became acquainted with defendant Nordness on about June 15, 1979. Nordness allegedly began to devise and participate in a scheme to defraud plaintiffs as early as April 1982, with the help of Johnson. According to the complaint, this scheme consisted of the payment of money or promises of such payment to Mark Johnson for making available to Nordness the names of applicants without plaintiffs' consent. The complaint further alleges that once these names were made available to Nordness, he would contact the applicant and arrange an interview with the respective hiring company. Upon a successful placement, Nordness would collect a percentage of the applicant's gross salary.

In their complaint, plaintiffs allege that the names of applicants contacted by the defendants, the placement fee charged by defendants, and the scheme to defraud was furthered by use of the mails and the telephone, in violation of 18 U.S.C. §§ 1341 and § 1343. Plaintiffs further allege that these violations constitute participation in an enterprise which affected interstate commerce, thus violating 18 U.S.C. § 1961(4), the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs allege an aggregate loss of $37,800 and allege that defendants used this income, derived from a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(a). Several pendent state claims arising under the common law of Illinois are also alleged.

Defendants contend, initially, that plaintiffs fail to plead a "pattern of racketeering activity" as required by 18 U.S.C.

§ 1961 and, alternately, that the complaint fails to plead the acts of mail and wire fraud with sufficient particularity under Fed.R.Civ.P. 9(b).

## DISCUSSION

### A. *Count I—Failure to Allege a Racketeering Enterprise Injury*

In defendants' brief in support of their motion to dismiss, defendants contend that Count I of the complaint fails to allege a racketeering enterprise injury in accordance with 18 U.S.C. § 1964(c) which provides that "any person injured in his business or property by reason of a violation of § 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

While this motion was being briefed by the parties, the existing case law surrounding what kind of injury is required to satisfy "by reason of a violation of § 1962" was unclear. The Second Circuit, in *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 741 F.2d 482 (2d Cir.1984), *rev'd*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), held that a plaintiff, in order to allege a "racketeering injury," must show injury "different in kind from that occurring as a result of the predicate acts themselves...." *Id.* at 496. Under this definition, the injury must have been caused by "an activity which RICO was designed to deter." *Id.* The Seventh Circuit, however, in *Haroco v. American National Bank*, 747 F.2d 384 (7th Cir. 1984), *aff'd*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), chose to follow the less demanding "pattern resulting from the predicate acts" standard. Obviously the two are not consistent and defendants implore this Court to either follow the Second Circuit or stay its determination until the Supreme Court has decided the issue. As the Supreme Court has timely made its determination in favor of the Seventh Circuit interpretation, this is no longer an issue.

In *Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court reversed the Second Circuit's holding in *Sedima,* stating that racketeering activity is to be construed as "no more and no less than commission of a predicate act" and that if the defendant "engages in a pattern of racketeering activity forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)." *Id.* at ——, 105 S.Ct. at 3286. The Court held that "a violation of § 1962(c)...requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at ——, 105 S.Ct. at 3286 (footnote omitted).

■■■ Applying this standard to the instant case, it is clear that the plaintiffs have alleged a sufficient pattern of racketeering activity to satisfy the Seventh Circuit, and now the Supreme Court, standard. In order to "conduct or participate," a defendant must be "enabled to commit predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise." *United States v. Scotto,* 641 F.2d 47 (2d Cir.1980). Plaintiffs allege in paragraph 13 of the complaint that defendant is the president and single shareholder of Random and that he controls all its activities. The second requirement, that of conducting an "enterprise," is defined by the statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiffs satisfy this requirement by alleging, in paragraph 9 of the complaint, that the defendant is a corporation under Illinois law. Finally, a pattern of racketeering activity must be alleged. The Court in *Sedima* held that the predicate acts alleged must be sufficiently related to constitute a pattern and that the acts be of the kind RICO was designed to deter or, more precisely, those listed in the statute. *Sedima, supra,* — U.S. at ——, 105 S.Ct. at 3286. In paragraphs 24 and 25 of the complaint, plaintiffs allege that on two or more occasions defendants used the mails and the wires in conducting the enterprise involved. Since mail and wire fraud are listed under § 1962 as prohibited activities, and are alleged to be related to the scheme to divert applicants from the plaintiffs, this element is satisfied.

### B. *Count I—Sufficiency of the Allegations—Particularity and Rule 9(b)*

Defendants alternately contend that the complaint fails to satisfy the particularity requirement for pleading fraud under Rule 9(b), of the Federal Rules of Civil Procedure. Defendants argue that plaintiffs' complaint is insufficient because it does not identify each of the mailings and telephone conversations used in furtherance of the fraud. In order to determine the adequacy of the pleadings in this respect, the Court must consider both Rule 9(b) and the statutes governing mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

Rule 9(b) governs the pleading of a violation involving fraud and reads as follows:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

It is important, however, to note that since the motion before the court is one of dismissal for failure to state a claim, the allegations must be taken as true and the facts must be viewed in a light most favorable to the plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

The court in *Tomera v. Galt,* 511 F.2d 504 (7th Cir.1975), explained the purpose of Rule 9(b):

> Rule 9 must be read together with Rules 8(a)(2), 8(e)(1), and 8(f), Federal Rules Civil Procedure. Rule 8 requires that a plaintiff gives through his pleadings notice to defendant of the nature of his claims. It urges the plaintiff to make known his claims simply and concisely in short, plain statements. With these principles in mind, the purpose of Rule 9

becomes clear. Rule 9 lists the actions in which slightly more is needed for notice. In a fraud action, a plaintiff need also state 'with particularity' the circumstances constituting the fraud.

*Id.* at 508 (citations omitted).

In *Tomera,* which involved a securities fraud violation, the court also stated that "... a violation of 10b–5 is selling securities either by omitting to discuss material facts or by making false statements. Tomera's first amended complaint relates such a scheme." *Id.* at 508.

The "scheme" pleaded in *Tomera* consisted of:

...On September 26, 1969, Alfred Rodriguez, then president of Astir, S.A. and Technical Director of Candamena, sold her several notes and 80 shares of unregistered stock in the mining companies he promoted. She further alleges defendant informed her that these three companies held valid mine leases in Mexico, were carrying on silver mining operations and processing the ore, and planned to use the funds she invested to further develop the mine property and facilities. In fact, none of the vital information was true.

*Id.* at 508. The court reasoned that "...these averments describing the bare bones of the fraudulent scheme coupled with Tomera's allegations that defendant used the mails and other instruments of transportation in interstate commerce state a sufficient rule 10b–5 claim." *Id.* The court concluded that the plaintiff's complaint "notified defendants of the nature of her claims, a rule 10b–5 securities fraud, and it alleged the details, a brief sketch of

how the fraudulent scheme operated, when and where it occurred, and the participants. This is enough. More information can be gathered through discovery." *Id.* at 509. (*citing Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ). *See also Haroco, Inc. v. American National Bank,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

The *Tomera* and *Haroco* courts place emphasis on two areas regarding the issue of particularity. First, there must be adequate notice to the defendant of the charges against him to allow him to plead. Second, the pleadings must establish enough of a "bare bones" scheme to defraud to exceed conclusory allegations. There is a fine distinction between a faulty, conclusory pleading and one that is consistent with our system of pleading and its emphasis on notice rather than fact or issue pleading. The court can reason by analogy that the same two goals exist in a pleading of mail or wire fraud as those of a securities fraud, but it is also helpful to examine those statutes to determine whether all Rule 9(b) requirements have been met in regard to 18 U.S.C. §§ 1341 and 1343.

The mail fraud statute, 18 U.S.C. § 1341,[1] consists of two essential elements: a scheme to defraud and use of the mails in furtherance of the scheme. *United States v. George,* 477 F.2d 508 (7th Cir.1973). The defendants' brief recognizes that the wire fraud statute was patterned after the mail fraud statute and was meant to be similarly interpreted, so that the issue of particularity in regard to 18 U.S.C. § 1343 [2] may

---

1. 18 U.S.C.A. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimate or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any

post office or other authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 1343 provides:

be determined at once with that of § 1341. *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1188 (4th Cir.1982).

With all these considerations in mind, not only the "notice" and "more than conclusory allegations" requirements, but the specifics called for by the statutes, the Court examines plaintiffs' complaint, keeping in mind that in considering a Rule 12(b)(6) motion, "a complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ To show a "scheme to defraud," plaintiffs allege paragraphs 23, 24, and 25 in the complaint, which serve as the culmination of a complete description of a scheme to deprive plaintiffs of their right to the unfettered services of an employee and the income from his efforts. Paragraph 23 names the individuals used by defendant, companies where those individuals were placed and the resulting placement fees. In paragraph 18 of the complaint, plaintiffs allege a date on which the scheme began, as well as a general description of what was involved, both the services of Mark Johnson and plaintiffs' right to confidential information. This is sufficient to satisfy the first prong of the test.

Plaintiffs must also show that this scheme was furthered by the use of the mails and wire. Defendants rely on *County of Cook v. Midcon Corp.*, 574 F.Supp. 902, 921 (N.D.Ill.1983), in support of the. inadequacy of plaintiffs' complaint in this respect. In *Midcon*, the court noted that "... but for one instance, plaintiffs fail to describe the contents of these mailings, when they were made or how they relate to the alleged scheme to defraud." *Id.* at 921. While defendants contend that paragraphs 23–25 are equally insufficient, this Court disagrees. Plaintiffs do describe, indirectly, the content of the mailings by specifying the business context in which they occurred. Paragraphs 5–13 describe the employment placement business and its practice of contacting both employers and employees in order to solicit business. In paragraph 14, plaintiffs further specify that Mark Johnson's job, in part, consisted of soliciting applicants and employers and that Mark Johnson became involved with defendant as early as April 19, 1982. By paragraphs 24 and 25 there is little question as to the contents of both the letters and the telephone calls alleged; they were clearly solicitous in nature.

As for the dates of the mailings and calls, defendants contend that the exact dates of each must be alleged, relying on *County of Cook, supra; Strauss v. United States*, 347 F.2d 691 (7th Cir.1965), and *United States v. Cobb*, 397 F.2d 416 (7th Cir.1968). *Strauss* and *Cobb* were criminal indictments and therefore are not applicable to the Rule 9(b) issue in this case. In any event, plaintiffs here have alleged the subject matter, parties contacted, and an approximate date on which the scheme began. Such allegations are sufficient even under the more stringent standards in *Cobb* and *Strauss*.

Finally, the court in *County of Cook, supra*, 574 F.Supp. at 921, required that the mailings relate to the scheme to defraud. Once again, the Court points to the allegations describing business context of employment counseling and its logistics. By setting out the details of the business, plaintiffs have sufficiently alleged the nec-

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, transmits or causes to be transmitted by means of wire, radio, or television communi- cation in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**500**

essary connection between using the mails and wires and the scheme.

This Court further relies on the holding in *Haroco v. American National Bank,* 747 F.2d 384 (7th Cir.1984), *aff'd,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The court held that while Fed.R. Civ.P. 9(b) applies to civil RICO actions involving fraud, the complaint "adequately specified the transactions, the content of the allegedly false representations, and the identities of those involved." *Id.* at 405. Most importantly, the complaint "put defendants on fair notice of the time and place of the alleged false representations," (*Id.* at 405) and later reasoned that "[t]here would have been little point in requiring plaintiffs to expand the complaint by also identifying *each notice* which included an interest rate." *Id.* at 405 (emphasis added.)

In regard to this complaint, this Court finds that defendants will have little difficulty answering the allegations as they now stand. The complaint sets out a scheme to defraud, use of the mails and wires in furtherance of it, and sufficient facts to put defendants on notice of the charges. Additionally, the Court will exercise its discretion and accept jurisdiction over the pendent state law claims pursuant to the doctrine of pendent jurisdiction.

### CONCLUSION

For all the above reasons, defendants' motion to dismiss is denied.

IT IS SO ORDERED.