**David UTZ, Plaintiff,**

v.

**William A. CORREA, et al.,
Defendants.**

**No. 85 Civ. 9165 CPKL.**

United States District Court,
S.D. New York.

April 2, 1986.

Howard B. Sirota, P.C., New York City, for plaintiff.

Jones, Day, Reavis & Pogue, New York City; Theordore L. Hecht, of counsel, for William A. Correa and Corco Const. Corp.

Daniel J. Brooks, New York City, for defendants.

LEISURE, District Judge:

This is a civil action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The plaintiff is David Utz. The defendants are: William A. Correa ("Correa"), the president of Corco Construction Corp. ("Corco"); Corco; Corco's and Correa's attorneys ("Attorney Defendants"); and John Does # 1–10.

This matter is before the Court on the motion of the Attorney Defendants to be dismissed from this action pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b) on the basis that the complaint fails to state a claim upon which relief can be granted. They also move for an award of attorney's fees under Rule 11.

The allegations of the complaint are summarized as follows. In March and May of 1985, Correa and Utz entered into three business ventures. First, in exchange for a demand note, Utz entrusted $100,000 to Correa based upon Correa's alleged representations that plaintiff's money, together with $100,000 of Correa's funds, would be invested in a joint securities account. The profits from the securities account were to be invested in real estate. Instead, Correa opened an account in the name of Corco without depositing any of Correa's money. Correa thereafter diverted the monies to his own use. Next, a real estate limited partnership, Tribeca Greenwich Associates, was formed, in which plaintiff was to receive a one-third interest. Plaintiff alleges that he did not receive such interest. The third venture involved plaintiff's investment of $35,000 with Correa to form and operate Twin Equities, Inc., a real estate marketing firm. Instead, Correa used the money to renovate Corco's offices.

When Utz demanded return of his money, threatening legal action, Correa agreed to deliver a certified check in the amount of $160,000, in exchange for certain releases signed by Utz. At Correa's direction, one of his attorneys, who initially worked for

both Utz and Correa, prepared the releases and a letter of apology for Utz's signature, and had them delivered to Utz by messenger. The attorney represented to Utz that after Utz signed and delivered the documents to the attorney, that the attorney would hold them in escrow pending delivery of the $160,000 certified check. Instead, after Utz delivered the signed documents, Correa and his attorney allegedly claimed that Correa never promised to pay the $160,000. Return of the releases and the letter of apology was refused.

The Attorney Defendants allege that the complaint is defective in one or more of the following respects that require it to be dismissed as to them. First, the complaint does not allege that any of the Attorney Defendants committed predicate acts of racketeering. Next, assuming that such predicate acts are properly alleged, the Attorneys Defendants alleged fraudulent conduct relates to but one fraudulent episode and therefore does not constitute a "pattern of racketeering activity" as that term is defined by 18 U.S.C. § 1961(5). The complaint fails to allege the existence of an enterprise engaged in, or the activities of which affect, interstate or foreign commerce. *See* 18 U.S.C. § 1962(a–c). Finally, the Attorney Defendants contend that Utz suffered no injury to his business or property by reason of a violation of § 1962 on the part of the Attorney Defendants. 18 U.S.C. § 1964(c).

In order to state a claim under RICO, a plaintiff must "allege the existence of seven constituent elements." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 464 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). These elements are: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Id., citing* 18 U.S.C. § 1962(a–c). A "pattern" of racketeering activity requires that the defendant commit at least two of the "predicate" acts of racketeering activity set forth in 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(5). In *Sedima, S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court noted the failure of Congress and the courts to develop a meaningful concept of "pattern." *Id.*, 105 S.Ct. at 3287. The Court explained that while § 1961(5) requires at least two acts of racketeering activity to form a "pattern," that does not mean that two such acts are sufficient to form a "pattern." *Id.* at 3285 n. 14. "Indeed, in common parlance two of anything do not generally form a 'pattern.'" *Id.* The Court then cited extensively from RICO's legislative history in order to explain this concept.

The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characterstics and are not isolated events." 18 U.S.C. § 3575(e).

*Sedima,* 105 S.Ct. at 3285 n. 14. This extensive footnote discussion parallels comments made by then District Judge Newman in *United States v. Moeller,* 402 F.Supp. 49 (D.Conn.1975). In *Moeller,* Judge Newman discussed the issue of "whether the statutory requirement of a 'pattern of racketeering activity' is adequately alleged by an allegation of two acts that occurred in the course of a single criminal episode," *id.* at 57, and quoted from the same portion of the Senate Report relied upon by the Supreme Court in *Sedima. Id.* at 58. The Supreme Court's discussion in *Sedima* appears to corroborate Judge Newman's conclusion that the word "pattern," as used in § 1962(c), should not be construed to mean two acts occurring in the course of the same criminal episode. *Id.; see also Exeter Towers Associates v. Bowditch,* 604 F.Supp. 1547, 1554 (D.Mass. 1985) (pre-*Sedima*).

Several District Courts have construed *Sedima's* dicta that a "pattern" must have both "relatedness" and "continuity" to refuse to find the existence of a pattern, where multiple acts of wire fraud or mail fraud are alleged to have been committed in connection with a single business transaction or in the furtherance of an isolated scheme. These courts have held that a pattern is established only where the predicate acts are committed in connection with multiple episodes of racketeering activity. *See Allington v. Carpenter,* 619 F.Supp. 474, 478 (C.D.Cal.1985); *Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1421–22 (W.D.Okla.1985); *Morgan v. Bank of Waukegan,* 615 F.Supp. 836, 838 (N.D.Ill. 1985); *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 832–33 (N.D.Ill.1985); *Rojas v. First Bank National Association,* 613 F.Supp. 968, 971 n. 1 (E.D.N.Y.1985) (McLaughlin, J.). *But see Systems Research, Inc. v. Random, Inc.,* 614 F.Supp. 494 (N.D.Ill.1985).

■ In the instant case, every action allegedly taken by the Attorney Defendants with regard to plaintiff was in the furtherance of an isolated fraudulent episode: an alleged scheme to defraud plaintiff into delivering the releases and the letter of apology in exchange for nothing of value. These misleading statments do not create a "pattern" under RICO because they were merely parts of "a single, unified activity." *Professional Assets Management, Inc.,* 616 F.Supp. at 1421 (numerous actions of accountants in preparing and issuing audit report were constituents of a single, unified transaction); *Northern Trust,* 615 F.Supp. at 833 (multiple mailings implementing single ongoing kickback scheme did not establish a RICO "pattern").

■ The allegations of fraudulent conduct on the part of Correa and Corco do not change this result. The complaint does not allege that the Attorney Defendants were involved in those episodes of fraudulent conduct. Allegations that the other defendants engaged in a pattern of racketeering activity can not be attributed to the Attorney Defendants under a RICO conspiracy theory without an allegation that they manifested participation in the affairs of the enterprise through agreeing to commit two or more predicate acts. *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

■ The complaint fails to allege that the Attorney Defendants committed or agreed to commit any such predicate acts. At most, it can be inferred from the complaint that the Attorney Defendants allegedly committed three predicate acts: a telephone call from Correa's attorney to Utz regarding the exchange of $160,000 for the releases and the letter of apology; a telephone call between Correa's attorney and plaintiff's attorney about the same subject; and the sending of a draft letter of apology to plaintiff's attorney. *See* Plaintiff's Memorandum of Law, at 9. With regard to the location of the activities of the Attorney Defendants, the only inference that can be made from the complaint is that all their actions took place in New York City.

The offices of the Attorney Defendants and plaintiff's residence are in Manhattan. All the telephone calls, consequently, were *intrastate* in nature, while the predicate act of wire fraud requires an interstate telephone call. 18 U.S.C. § 1343. Such communications are insufficient to constitute a violation of the wire fraud statute. *See Harris Trust & Savings Bank v. Ellis,* 609 F.Supp. 1118, 1122 (N.D.Ill.1985) (RICO claim dismissed where only alleged predicate acts of wire fraud were telephone calls between Illinois residents); *United States v. Freeman,* 524 F.2d 337, 339 (7th Cir. 1975) (wire fraud requires "an interstate telephone call"), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); *cf. United States v. DeBiasi,* 712 F.2d 785, 791 (2d Cir.), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983); *United States v. DeSapio,* 299 F.Supp. 436, 448 (S.D.N.Y.1969) ("communication itself must be interstate"), *aff'd,* 435 F.2d 272 (2d Cir. 1970), *cert. denied,* 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971). The delivery of the draft letter of apology by messenger does not violate the mail fraud statute, since the United States mails were not used.

The Court is unable to attribute the actions of Correa and Corco to the Attorney Defendants. The only activities possibly chargeable to them fail to give rise to a pattern of racketeering activity. The Court therefore holds that as to the Attorney Defendants, the complaint fails to state a claim upon which relief can be granted. The deficiencies in the complaint are not of the type that lend themselves to correction by amendment of the complaint. As to the Attorney Defendants, the complaint is therefore dismissed with prejudice to the filing of an amended complaint.

Having determined that the complaint should be dismissed on the basis that it fails to allege that the Attorney Defendants engaged in a pattern of racketeering activity, it is unnecessary to discuss whether the complaint properly alleges the existence of a RICO enterprise, or whether Utz was injured in his business or property by reason of a violation of 18 U.S.C. § 1962.

## Conclusion

The motion to dismiss the complaint as against the Attorney Defendants is granted, with prejudice to the filing of an amended complaint. The motion for sanctions under Rule 11 is denied.

**SO ORDERED.**