**RICHARDSON GREENSHIELDS OF CANADA LIMITED, Plaintiff,**

v.

**Hiren S. PATEL, Defendant.**

**Hiren S. PATEL, Plaintiff,**

v.

**RICHARDSON GREENSHIELDS SECURITIES INC., Defendant.**

Nos. 84 Civ. 5714(JMW), 85 Civ. 0001(JMW).

United States District Court, S.D. New York.

May 13, 1986.

Richard Miller, Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### Introduction

Plaintiff Richardson Greenshields of Canada Limited ("RGC") and defendant Richardson Greenshields Securities Inc. ("RG") have moved under Fed.R.Civ.P. 9(b) and 12(b) to dismiss claims asserted by Hiren Patel in these consolidated actions. Specifically, both RGC and RG seek dismissal under 12(b) of Patel's claims against them under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Additionally, RGC moves under 9(b) to dismiss Patel's three counterclaims based on fraud. The motion to dismiss the RICO claims is granted and the motion to dismiss the fraud counterclaims is denied.

### Facts

Patel's factual allegations, assumed true on these motions to dismiss, are as follows:

RG is a futures commission merchant and a wholly owned subsidiary of RGC. Patel is an Illinois resident and investor. In April 1984, James Aspinwall, account representative in RG's Tequesta, Florida office, successfully solicited Patel to open a commodity trading account with RG. Aspinwall, under the supervision of Angelo DaBiero, manager of the Tequesta office, misrepresented his qualifications and those of RG and RGC. In April and May 1984, Aspinwall, DaBiero, and Patrick Watters and Alan Helmbrecht, two other RG employees, mishandled Patel's account and misrepresented by telephone and telex the cash requirements of his trading account. As a result, Patel's account was undercapitalized and placed at great risk.

On May 16 or 17, 1984, these RG employees informed Patel that if he deposited $50,000 into his account RG would guarantee that he would not lose money. Patel gave them a check for $50,000. On May

Thomas Stritter, Morgan, Lewis & Bockins, New York City, for plaintiff.

21, Patel was forced to give a second $50,-000 check to RG for his account and on May 23 tendered to RG shares of stock as collateral until he could obtain sufficient funds to cover the second check.

At the time RG was requesting the second $50,000 from Patel to bolster his account, however, the RG employees knew the account was about to be liquidated and Patel held responsible for losses. On May 22, 1984, the Tequesta employees for the first time informed RG officers that the account had been improperly handled. Shortly thereafter, RG assigned its claim for the account's deficit balance to RGC, which commenced an action against Patel for $1.5 million in damages.

### RICO Allegations

█ Patel alleges a variety of RICO violations under 18 U.S.C. §§ 1964(a), (c), and (d), claiming that RGC, RG, and its employees variously operated as enterprises or persons within the meaning of the RICO statute. The Court need not address the mix of RICO allegations because all suffer one fatal flaw. A fundamental prerequisite for a RICO claim is that a "pattern of racketeering activity" has occurred. Although plaintiff does allege that predicate acts of mail and wire fraud were committed by the companies and their employees in this case, those acts do not constitute a pattern under RICO because they were all in furtherance of a single alleged scheme to defraud Mr. Patel.

█ In the wake of the Supreme Court's decision in *Sedima S.P.R.L. v. Imrex Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the lower courts have closely scrutinized the sufficiency of pattern allegations, particularly in the context of a RICO claim based on fraud. As one court in this district has recently noted, the legacy of *Sedima* is that a "pattern" requires "more than one single criminal episode carved into distinct predicate acts...." *Commercial Agropequaria Menichetti Fuente S.A.C.I. v. Heather Trading Corporation,* 85 Civ. 3240, slip op. at 8 (S.D.N.Y. Mar. 27, 1986) [Available on WESTLAW, DCTU database]. Fraudulent misrepresentations in furtherance of a single fraudulent scheme "do not create a 'pattern' under RICO because they were merely parts of 'a single, unified activity.'" *Utz v. Correa,* 631 F.Supp. 592, 595 (S.D.N.Y.1986) (quoting *Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1421 (W.D.Okla. 1985)); *see also Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 832 (N.D.Ill.1985) (The Supreme Court in *Sedima* intended pattern to mean "acts occurring in *different criminal episodes,* episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity." (emphasis original)); *but see Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y. 1985).

█ Even assuming RGC, RG, and RG's employees committed all the predicate acts alleged, all were in furtherance of a single scheme: the defrauding of Hiren Patel through his trading account. Numerous courts have construed "pattern" in such a way as to preclude "the existence of a pattern, where multiple acts of wire fraud or mail fraud are alleged to have been committed in connection with a single business transaction or in the furtherance of an isolated scheme." *Utz,* at 595. In this case, all of the acts alleged were part of the same alleged effort to perpetrate a fraud on Mr. Patel and maintain that fraud. The allegations do not support the essential element of pattern. Accordingly, the RICO claims, Counts IV–VII of the complaint and Counts IV–VII of the counterclaim, are dismissed.

### Fraud Allegations

█ RGC moves under Fed.R.Civ.P. 9(b) to dismiss Patel's counterclaim Counts II, VIII, XII, alleging fraud under the Commodity Exchange Act, 7 U.S.C. § 4, common law fraud, and fraud under N.Y.Gen. Bus.Law § 352 *et seq.* That motion is denied. Fed.R.Civ.P. 9(b) provides in pertinent part: "In all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A central purpose of the rule is "to ensure that each defendant is provided with reasonable detail concerning the nature of his particular involvement in the alleged fraud." *Goldberg v. Meridor,* 81 F.R.D. 105, 110 (S.D.N.Y.1979) (citations omitted).

While Patel's fraud-based counterclaims against RGC do not contain great detail concerning the nature of RGC's involvement in the fraud or the extent to which RGC is implicated in any fraud through its agency relationship with RG, sufficient particulars have been supplied. Discovery is complete in this case and the parties have no doubt explored carefully the nature of the relationship between RG and RGC and the acts of both corporate entities and their employees concerning Mr. Patel. RGC is surely on notice of the alleged nature of its participation in the fraud and has had the opportunity to prepare itself to address claims arising out of the alleged fraud. Indeed, the trial memorandum of RGC and RG indicates that they are prepared to meet claims against RGC based upon an agency relationship with RG. Trial Memorandum of Richardson Greenshields at 26–28. The concerns of Fed.R. Civ.P. 9(b) are simply not implicated at this stage of the case where a reasonable amount of notice has been provided.

### Conclusion

Counts IV–VII of the Second Amended Complaint and Counts IV–VII of the Second Amended Counterclaim are dismissed.

So Ordered.